UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMARRO S. DANTZLER,

          Petitioner,

    v.                                                       Case No. 23-C-755

WARDEN LIZZIE TEGELS,

          Respondent.

## DECISION AND ORDER DENYING WRIT OF HABEAS CORPUS

      Petitioner Jermarro S. Dantzler, who is currently incarcerated at Jackson Correctional Institution, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming his state conviction and sentence violated his rights under the United States Constitution. He seeks relief from his judgment of conviction and sentence, following no-contest pleas, to one count of second-degree sexual assault of a minor and one count of bail jumping. On October 4, 2016, Dantzler entered his plea in Milwaukee County Circuit Court. Dkt. No. 2-2. On November 21, 2016, he was sentenced to a total of eighteen years of initial confinement and eight years of extended supervision. Dkt. No. 2-3. Respondent answered the petition, and the case is now fully briefed. For the following reasons, the court will deny Dantzler's petition.

## BACKGROUND

      The background facts are taken from the Wisconsin Court of Appeals' decision affirming Dantzler's judgment of conviction. Dkt. No. 2-7. The State charged Dantzler with one count of first-degree sexual assault. Dkt. No. 2-7 at 2. He was later charged with conspiracy to commit perjury and bail jumping, because he allegedly enlisted several people to create a false alibi and fabricate evidence. *Id.* Dantzler was facing a mandatory minimum of 25 years of confinement

1

with these charges, but instead, agreed to plead no-contest to second-degree assault of a child in No. 2015CF4454 and bail jumping in No. 2016CF2154. *Id.* Dantzler was then sentenced to eighteen years of initial confinement and eight years of extended supervision. *Id.*

Dantzler filed a postconviction motion to withdraw his plea on the sole ground that his trial counsel was ineffective for not informing him that he would be required to register as a sex offender for life. *Id.* Instead, he claimed that his trial counsel told him that he would only be required to be on the sex offender registry for fifteen years. *Id.* According to Dantzler, he would not have entered his plea had he known that he would be required to register as a sex offender for a lifetime. *Id.*

The circuit court held a hearing and denied Dantzler's motion. *Id.* Dantzler's attorney testified that she could not say with certainty that she accurately informed him about a lifetime sex offender registration but admitted that it was "highly likely" she informed him the registration time was fifteen years. *Id.* at 4. The circuit court nevertheless concluded that even if Dantzler had been misinformed, his claim that he would have rejected the plea agreement had he been properly informed was not credible. The court noted that by pleading no contest pursuant to the plea agreement, Dantzler had avoided a mandatory-minimum sentence of 25 years and concluded that Danzler "ha[d] not demonstrated by clear and convincing evidence that he would have risked a 25-year minimum mandatory confinement term to avoid a lifetime registry requirement." *Id.*

The Wisconsin Court of Appeals affirmed, concluding that Dantzler's trial counsel did not render ineffective assistance and, thus, he was not entitled to withdraw his pleas. *Id.* at 6. In so ruling, the Court of Appeals held that the requirement to register as a sex offender was "a collateral consequence of a plea" and that "failing to advise a defendant of a collateral consequence does not invalidate an otherwise valid plea." *Id.* at 4. The appellate court also noted, as the trial court had, that the plea agreement "spared [Dantzler] a mandatory minimum 25 years of confinement . . . .

2

[and] a trial during which the State would have presented overwhelming evidence of guilt." *Id.* at 5. It concluded that "because Dantzler's sex offender registration requirement was an indirect consequence of his conviction and did not go to the core of his plea agreement, counsel was not ineffective for any alleged misinformation pertaining to the registration period." *Id.*

By order dated March 16, 2022, the Wisconsin Supreme Court denied Dantzler's petition for review. Having exhausted his state court remedies, Dantzler filed his petition for federal relief under 28 U.S.C. § 2254 on June 11, 2023.

## LEGAL STANDARD

Dantzler's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, which limits the power of federal courts to grant writs of habeas corpus based on claims that were adjudicated on the merits by a state court. Under AEDPA, a federal court may grant habeas relief when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" United States Supreme Court decisions, or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule or, in applying the proper legal rule, reached the opposite result as the Supreme Court would have on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's decision is an unreasonable application of established precedent when that state court applies Supreme Court precedent in "an objectively unreasonable manner." *Id.* In addition, the determination of factual issues made by a state court is presumed to be correct, though that presumption can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

3

Under the standard set forth by Section 2254(d) of AEDPA, federal courts are "limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court decision." *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (citation omitted); *see also Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003) (observing that AEDPA "significantly constrain[s] any federal court review of a state court conviction"). This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

## ANALYSIS

Dantzler asserts that his trial counsel provided ineffective assistance by misinforming him about the length of time he would be required to register as a sex offender. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 582 U.S. 357, 364–65 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

4

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission from counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks and citations omitted).

Dantzler argues that his trial attorney provided deficient performance under *Strickland* by erroneously advising him that he would be required to register as a sex offender for only fifteen years instead of for the rest of his life. The Wisconsin Court of Appeals concluded that, because under Wisconsin law "[f]ailing to advise a defendant of a collateral consequence does not invalidate an otherwise valid plea," and "the requirement to register as a sex offender is a collateral consequence of a plea," Dantzler's trial counsel was not ineffective for any alleged misinformation regarding the period for mandatory registration. Dkt. No. 2-7 at 4–5. Dantzler contends that, in so ruling, the Wisconsin Court of Appeals unreasonably applied *Strickland*, by failing to recognize the principles of *Padilla v. Kentucky*, 559 U.S. 356 (2010) and *Lee v. United States*, 582 U.S. 357 (2017), and not applying those principles beyond the duty to advise noncitizen defendants about mandatory deportation as a consequence of conviction to other collateral consequences such as sex offender registration.

5

In *Padilla*, the Court held that counsel was ineffective for failing to advise his client that entering a guilty plea made him subject to automatic deportation. 559 U.S. at 560. First, the Court concluded that, contrary to the expressed view of many courts, "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 366. The Court explained that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Id.* Accordingly, although the Supreme Court of Kentucky had rejected Padilla's ineffectiveness claim on the ground that advice about the risk of deportation concerned a collateral matter, the Court ruled that "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id.* at 369.

The Court concluded that the defendant had thus sufficiently alleged constitutional deficiency but, as to "*Strickland*'s second prong, prejudice," the Court chose to "leave [it] to the Kentucky courts to consider in the first instance." *Id.* Seven years later, in *Lee*, a case in which it was undisputed that the defendant had received deficient representation when his attorney erroneously assured him that he would not be deported as a result of his plea, the Court reached *Strickland*'s second prong. 582 U.S. at 360. The Court held in *Lee* that the defendant in that case was prejudiced by his plea-stage counsel's erroneous advice. *Id.* at 371. There was no dispute in *Lee* that, had the defendant been properly advised on the consequences of his conviction, he would not have pleaded guilty. The government argued, however, that the evidence in the underlying

6

case was so strong that, even if the defendant had not entered a guilty plea but had gone to trial instead, he would have been found guilty.

The Court rejected the government's argument and ruled that "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Id.* at 364 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). Instead, courts are instructed to "consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 483)). The Court explained, "[t]hat is because, while we ordinarily 'apply a strong presumption of reliability to judicial proceedings,' 'we cannot accord' any such presumption 'to judicial proceedings that never took place.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 482–83). But importantly, this does not mean that the attorney's erroneous advice always constitutes prejudice. The defendant must still demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 364–65 (quoting *Flores–Ortega*, 528 U.S. at 483).

As to the first prong of *Strickland*, it was not unreasonable for the Wisconsin Court of Appeals to conclude that *Padilla* need not be extended to the facts of this case. Dantzler notes that several states, including Illinois and Minnesota, have extended the logic of *Padilla* to include advice about mandatory sex offender registration. *See e.g.*, *People v. Dodds*, 2014 IL App (1st) 122268, ¶¶ 38–39, 7 N.E.3d 83 (adopting the rationale of *Padilla* to find that counsel was deficient for misinforming defendant on length of sex offender registration requirement); *State v. Ellis-Strong*, 899 N.W.2d 531 (Minn. App. 2017) (same). But the fact that some courts have so held does not mean that the Wisconsin courts' failure to extend *Padilla* in this fashion is unreasonable. And if that is true, then Dantzler is not entitled to relief under § 2254. "'[I]f a habeas court must

extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision'" *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

Here, Dantzler has cited only state court decisions that have adopted his reading of *Padilla* and *Lee* on direct review of state court convictions. He has not cited any Supreme Court decision addressing the issue, nor has he cited any federal court decision extending *Padilla* and *Lee* to grant relief from a state court conviction on such grounds under the deferential standard of § 2254. Importantly, *Padilla* was based in large part upon the fact, long recognized by the Court, that while not, in a strict sense, a criminal sanction, "deportation is a particularly severe 'penalty.'" 559 U.S. at 365 (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893)). Registering as a sex offender for life, as opposed to fifteen years, on the other hand, is not so drastic a difference such that it would amount to an unforeseen and severe penalty for a person considering a plea of guilty. It thus follows that Wisconsin Court of Appeals' decision rejecting Dantzler's claim of ineffectiveness of counsel was not an unreasonable application of clearly established federal law as reflected in *Padilla* and *Lee*. *See Woodall*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

Dantzler has also misread *Lee*. He seems to think that *Lee* mandates a finding that a defendant suffers prejudice whenever his attorney incorrectly advises him as to the consequences of pleading guilty. But that's not what *Lee* says. *Lee* holds that if the defendant establishes that, had he been accurately advised, he would have risked going to trial instead of entering a guilty plea, the court cannot base its finding as to whether the defendant suffered prejudice on the strength of the evidence against him. 582 U.S. 370–71.

8

That is not what the state court did. In this case, the circuit court found that Dantzler "is not credible when he alleges that he would have rejected the State's plea offer - an offer which spared him a mandatory minimum 25 years of confinement — and proceeded to a trial during which the State would have presented overwhelming evidence of guilt." Decision Denying Mot. for Postconviction Relief, at 2, Dkt. No. 2-6. The court based this finding on the fact that Dantzler had "demonstrated a character for untruthfulness at the outset of this case in his attempts to evade responsibility for his conduct" and that "he said nothing at sentencing when he was informed that the period of registration was for life and not 15 years." *Id.* The Court of Appeals affirmed the trial court's decision concluding not only that Dantzler had failed to establish deficient performance but also because "there is no evidence suggesting that the registration period had any bearing on the plea agreement." Dkt. No. 2-7 at 5. This finding that Dantzler had failed to prove that, had he been accurately advised, he would have gone to trial is not "an unreasonable determination of the facts in light of the evidence presented." § 2254(d)(2). Dantzler has failed to identify any clear and convincing evidence that would rebut the presumption that it is correct. § 2254(e)(1).

In sum, the state courts rejected Dantzler's claim of ineffective assistance of counsel for two reasons: (1) he failed to establish that his attorney's assistance was constitutionally deficient; and (2) he failed to establish that his attorney's erroneous advice was prejudicial. Neither reason is based upon an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. Dantzler is not entitled to federal relief under § 2254.

## CONCLUSION

For the foregoing reasons, Dantzler's petition for writ of habeas corpus (Dkt. No. 1) is **DENIED**. The Clerk is directed to enter judgment accordingly. A certificate of appealability will

be **DENIED**, as reasonable jurists would not believe that Dantzler has made a substantial showing of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Dantzler is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the United States Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Dantzler decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

      **SO ORDERED** at Green Bay, Wisconsin this <u>30th</u> day of September, 2024.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge